UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NEIL GRENNING,

                              Petitioner,

        v.

JAMES KEY,

                              Respondent.

CASE NO. 3:16-CV-05983-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: May 25, 2018

        The District Court has referred this action to United States Magistrate Judge David W.

Christel. Petitioner filed his federal habeas Petition ("Petition"), pursuant to 28 U.S.C. § 2254,

seeking relief from state court convictions and sentence. *See* Dkt. 1, 8. The Court concludes

Petitioner failed to properly exhaust his state court remedies as to Ground 6, in part, and Ground

7, in full. Because Petitioner's time for pursuing state remedies has expired, Petitioner has

procedurally defaulted on Ground 6, in part, and Ground 7. Further, the state court's adjudication

of Grounds 1-5, the remaining portion of Ground 6, and Grounds 7-9 was not contrary to, or an

unreasonable application of, clearly established federal law. Therefore, the undersigned

recommends the Petition be denied.

I.      **Background**

A.  Factual Background

The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> On March 3, 2002, the Tacoma police department received a call from a mother concerned that Grenning had sexually molested her five year old son, RW. She explained that Grenning was her neighbor and that he occasionally took care of RW. The officer suggested that the mother take RW to a hospital. RW's mother took him to Mary Bridge Children's Hospital where a doctor examined him. During the examination, RW told the doctor that "Neil" had touched him on his "pee pee."
>
> On March 5, 2002, two days after RW's mother called the police, Detective Baker obtained a search warrant for Grenning's residence. In the affidavit in support of the warrant, Detective Baker indicated that RW's mother found RW in the bathroom placing an object in his anus. RW told his mother he was "trying to get out what Neil had put into my butt." Detective Baker stated that RW handed his mother a jar of petroleum jelly and said, "[t]his is what Neil put on his [sic] pee pee and put in my butt." RW's mother also told Detective Baker that Grenning had once showed her a digital picture he took of RW and that RW told her Grenning had taken pictures of him unclothed.
>
> Detective Baker explained in his affidavit that Grenning told the officers during an interview that he kept personal lubricant near his computer because "it was more enjoyable to do that while sitting at the computer." Grenning's computer was located in his bedroom. When the officers asked Grenning if he had pornographic materials on his personal computer, he stated that it was an older computer and that there may be some "old stuff" on it.
>
> The search warrant granted the officers permission to search for and seize a variety of items concealed at Grenning's home that were material to the investigation or prosecution of first degree child molestation. It required detectives to enter and search the home within 10 days.
>
> On March 6, officers entered Grenning's home. Detective Voce, who was assigned to handle all computer equipment during the search, lawfully seized Grenning's computer and hard drives. On March 15, Detective Voce copied Grenning's three hard drives and then began investigating and reviewing the copied hard drives. He recovered two images of what appeared to be commercial child pornography. At this point, he stopped his investigation to obtain another search warrant.

. . .

On March 27, police detectives obtained a second search warrant, expanding the search to include photographs, photograph albums, and drawings depicting minors engaged in sexually explicit activity. The warrant required that the search be done within 60 days.

More than a year later, on April 3, 2003, Detective Voce continued reviewing the information on the copied hard drives, specifically looking for evidence of child molestation and child pornography. He ultimately uncovered approximately 35,000 to 40,000 photographs of minors engaged in sexually explicit conduct on Grenning's hard drives. He uncovered 300 images depicting RW being sexually assaulted and molested, 40 images of a second victim, BH, being sexually assaulted and molested, and 20 images of commercial child pornography. The commercial child pornography images depicted adult males sexually assaulting or molesting minors.

According to Detective Voce, the images were located in the "unallocated space" of two of the three hard drives seized from Grenning's house. Grenning's computer was a Macintosh brand computer with an Apple operating system. Macintosh hard drives contain seven different partitions (or sections) of the drive. Two of Grenning's hard drives only contained four of the seven usual partitions and it appeared to Detective Voce that they had been intentionally removed. Detective Voce explained that removing partitions would cause data to be listed as unallocated even if the user had not deleted it. Additionally, the removed partitions made it more difficult to access the images and data on the hard drives. Detective Voce found all of the child pornography pictures on the two hard drives with unallocated space.

. . .

In April 2003, the Criminal Misconduct Office in Brisbane, Australia contacted Detective Baker. Australian police suspected that pornographic photographs they discovered in a computer in Australia were Grenning's photos. The photos depicted victim BH being sexually assaulted and molested. Detective Voce obtained another search warrant using the information obtained from the Australian police to specifically look for evidence relating to BH on Grenning's copied hard drives.

Detectives found photos of BH on Grenning's hard drives and instant message chats. Chat participant "Photokind" referred to himself as a recent graduate of Pacific Lutheran University who was looking for work and applying for a teaching license. This description matched Grenning. In one chat, Photokind described a camping trip that matched up with the images found on Grenning's computer of BH being sexually assaulted. The chat gave a play-by-play narrative of the camping trip and detailed each of the pictures very specifically.

On June 7, 2004, prosecutors charged Grenning with 17 counts of first degree child rape, 2 counts of attempted first degree child rape, 6 counts of first degree child molestation, 26 counts of sexual exploitation of a minor, 1 count of second degree child assault, and 20 counts of possession of depictions of a minor engaged in sexually explicit conduct. As an aggravating factor, the State alleged that Grenning committed the second degree child assault and possession of child pornography crimes with sexual motivation.

. . .

Grenning made a pretrial motion to suppress the evidence the police obtained from the copies of his hard drives, arguing that the search was untimely. The trial court denied the motion. Grenning also made a pretrial motion for mirror-image copies of his computer hard drives. The trial court granted Grenning's motion, but it crafted a protective order requiring that the mirror-image hard drive copies only be viewed and tested at the Tacoma police facility, because it was a secured location. It directed police detectives to provide a computer, monitor, keyboard, mouse, and operating system for Grenning.

Grenning was allowed to access the hard drives between 8:30 a.m. and 4:30 p.m. Monday through Friday. The drives were to remain in the secured location. Only the defendant, his counsel, and his computer expert could view the data on the imaged drives. Once Grenning completed his examination, he had to notify Detective Voce, who would then remove the imaged drives and store them until completion of the case. While the drives were being stored, Detective Voce was not to view any of the data contained on the imaged drives or investigate what type of forensic evaluation Grenning conducted on the drives or the computer.

Grenning asked the trial court to reconsider the protective order and to allow him to remove the copied hard drives from the secure location so his expert could use his own lab to analyze the hard drives. The trial court denied the motion, determining that the protective order was necessary to protect the victims and to ensure that material contained on the hard drives was not released on the internet.

. . .

At trial, BH was nine years old. At the time of the events, BH was approximately six years old. BH testified that he went on a camping trip with his older brother and Grenning. BH slept in the same tent as Grenning, and BH testified that Grenning touched his penis with his mouth. BH was nervous testifying and had difficulty talking about the camping trip.

RW was seven years old at the time of trial. The trial court found RW unavailable to testify due to his age.

On June 18, 2004, a jury convicted Grenning of 16 counts of first degree child rape, 26 counts of sexual exploitation of a minor, 6 counts of first degree child molestation, 1 count of second degree assault of a child with sexual motivation, 20 counts of possession of depictions of minors engaged in sexually explicit conduct with sexual motivation, and 2 counts of first degree attempted child rape.

At sentencing, the trial court imposed the high end standard range for each offense, ran the sentences for the convictions within each type of offense concurrently and then ran each class of offenses consecutively. This resulted in a total sentence of 1,404 months (117 years).

Dkt. 17, Exhibit 21, pp. 2-7; *State v. Grenning*, 142 Wash. App. 518, 525–30 (2008), *aff'd*, 169 Wash. 2d 47 (2010) (citations omitted, footnotes omitted).

B. Procedural Background

1. *Direct Appeals*

Petitioner challenged his Pierce County Superior Court convictions and sentence on direct appeal, raising eighteen grounds for relief. Dkt. 17, Exhibits 14-15. The state court of appeals affirmed-in-part and reversed-in-part Petitioner's convictions and sentence. *Id*. at Exhibit 21. The court reversed the convictions for 20 counts of possession of child pornography because the trial court's protective order was unduly burdensome. *Id*. The remaining convictions were affirmed. *Id*. The State filed a motion to reconsider, which was denied. *Id*. at Exhibits 22-27. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *Id*. at Exhibit 28. The State filed a cross-petition arguing the state court of appeals misapplied the law when reversing the 20 child pornography convictions. *Id*. at Exhibit 29. On October 2, 2008, the state supreme court denied Petitioner's petition for review, but granted review as to the issue raised by the State in the cross-petition. *Id*. at Exhibit 31. The state supreme court affirmed the decision of the state court of appeals and remanded the case on June 17, 2010. *Id*. at Exhibit 34, *State v. Grenning*, 169 Wn.2d 47 (2010).

1    On remand, the State did not retry the 20 counts of possession of child pornography. *See*

2    Dkt. 17, Exhibit 38. The State requested the superior court resentence Petitioner on the

3    convictions which were affirmed on direct appeal. *Id*. On October 26, 2010, the superior court

4    resentenced Petitioner to 1,392 months. *Id*. at p. 16.

5    In a second direct appeal, Petitioner appealed the resentencing to the state court of

6    appeals. Dkt. 17, Exhibits 40-41. The State conceded that certain conditions of custody in the

7    judgment and sentence were imposed in error. *Id*. at Exhibit 42. The state court of appeals

8    vacated the community custody conditions imposed under former RCW 9.94A.712, but

9    otherwise affirmed the 2010 resentencing. *Id*. at Exhibit 44. Petitioner filed a motion to

10    reconsider, which was denied. *Id*. at Exhibits 45, 48. Petitioner sought discretionary review from

11    the state supreme court. *Id*. at Exhibit 51. On April 4, 2013, the state supreme court denied

12    review without comment. *Id*. at Exhibit 52. Petitioner filed a petition for writ of certiorari with

13    the United States Supreme Court, which was denied on October 7, 2013. *See Grenning v.*

14    *Washington*, 571 U.S. 865 (2013).

15    2.  *Personal Restraint Petitions*

16    Petitioner then filed three personal restraint petitions ("PRP") seeking state post-

17    conviction relief. *See* Dkt. 17, Exhibits 54, 65, 75. The first PRP was filed on October 30, 2013.

18    *Id*. at Exhibits 54-55. Petitioner's first PRP was dismissed by the state court of appeals on

19    August 15, 2014. *Id*. at Exhibit 59. Petitioner sought discretionary review from the state supreme

20    court. *Id*. at Exhibit 60. The Commissioner of the state supreme court denied the motion. *Id*. at

21    Exhibit 61. Petitioner filed a motion to modify the Commissioner's ruling, which was denied by

22    the state supreme court without comment. *Id*. at Exhibits 62-63.

23

24

REPORT AND RECOMMENDATION - 6

1      On September 18, 2014, Petitioner filed his second PRP. Dkt. 17, Exhibit 65. The state

2  supreme court transferred the second PRP to the state court of appeals. *Id.* at Exhibit 66. On

3  April 6, 2015, the state court of appeals transferred the PRP to the state supreme court because

4  Petitioner did not show good cause for his failure to raise the double jeopardy claim in his first

5  PRP. *Id.* at Exhibit 69. The state supreme court accepted the transfer and Petitioner's second PRP

6  was submitted to Commissioner of the state supreme court for consideration. *Id.* at Exhibit 70.

7  On October 23, 2015, the Commissioner dismissed the second PRP on the merits. *Id.* at Exhibit

8  71. Petitioner filed a motion to modify the Commissioner's ruling, which was denied without

9  comment on January 6, 2016. *Id.* at Exhibits 72-73.

10      Petitioner filed the third PRP on June 29, 2015. Dkt. 17, Exhibit 75; *see also* Dkt. 16, p.

11  11. In his third PRP, Petitioner challenges the trial court's order imposing legal financial

12  obligations on Petitioner. Dkt. 17, Exhibit 75. As this ground is unrelated to the grounds raised in

13  the Petition, the Court will not discuss the third PRP.

14      3.  *Federal Petition*

15      On November 23, 2016, Petitioner filed his Petition (Dkt. 8) raising the following nine

16  grounds:

17      1.  The State failed to provide Petitioner with notice that it intended to seek an
         exceptional sentence in the charging document.

18      2.  The trial court erred when it, rather than a jury, made findings of fact to support
         the exceptional sentence.

19      3.  The trial court's protective order deprived Petitioner an opportunity to prepare a
         defense for trial.

20      4.  Petitioner's double jeopardy rights were violated when his was convicted of both
         sexual exploitation of a minor and second-degree assault of a child.

21      5.  The trial court's use of multiple convictions to establish a higher standard range
22         and use of the same multiple convictions to aggravate his sentence violated
         double jeopardy principles.

23      6.  Petitioner's right to confront was violated when R.W.'s statements were admitted
         through hearsay.

24

REPORT AND RECOMMENDATION - 7

1    7.  There was insufficient evidence to convict Petitioner of second-degree assault of a
         child (Count 40).

2    8.  There was insufficient evidence to convict Petitioner of rape of a child (Count
         36).

3    9.  Petitioner's "de facto life sentence" constitutes cruel and unusual punishment.

4    Respondent filed an Answer on March 1, 2017, which was served on Petitioner. Dkt. 16.

5    In the Answer, Respondent asserts Petitioner failed to exhaust Ground 5, a portion of Ground 6,

6    and Ground 7 and these claims are now barred from federal review. *Id*. Respondent also argues

7    the state court's adjudication of Grounds 1-4, the remaining portion of Ground 6, and Grounds 7-

8    9 was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. On

9    May 15, 2017, Petitioner filed his Traverse. Dkt. 24. Respondent filed his Reply on May 19,

10   2017. The Court ordered Respondent to file a supplemental answer because the record did not

11   include photographs from the state court record necessary to determine Grounds 7 and 8. *See*

12   Dkt. 28, 37, 42, 48.[1] On December 8, 2017, the Court received the supplemental record. *See* Dkt.

13   49. The Court also ordered supplemental briefing directing the parties to provide argument on

14   the merits of Ground 5 on February 1, 2018. Dkt. 52. Respondent filed a Supplemental Answer

15   on February 27, 2018, and, on April 4, 2018, Petitioner filed his Supplemental Traverse. Dkt. 53,

16   59.

17                                   EVIDENTIARY HEARING

18   The decision to hold an evidentiary hearing is committed to the Court's discretion.

19   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

20   hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

21   entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

22   _____

23   [1] The Court appointed Petitioner with counsel for the limited purpose of resolving issues involving the
     production and review of the requested supplemental record. Dkt. 37. After the supplemental record was produced,

24   the Court terminated the Court-appointed counsel on December 17, 2017. Dkt. 50.

available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 131 S.Ct. 1388. The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

<u>DISCUSSION</u>

**I.      Exhaustion and Procedural Default**

Respondent first maintains Petitioner failed to exhaust Ground 5 and a portion of Ground 6, and is procedurally barred from federal review of these grounds. Dkt. 16. In discussing Ground 7, Respondent also states that it appears this ground is unexhausted. *See id.* at pp. 49-50. Thus, the Court will analyze whether Ground 5, a portion of Ground 6, and Ground 7 were properly exhausted.

A.  <u>Exhaustion of State Remedies</u>

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (*citing Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

   1. *Ground 5*

   In Ground 5 of the Petition, Petitioner alleges the trial court's use of multiple convictions to establish a higher standard sentencing range and use of the same multiple convictions to aggravate his sentence violated double jeopardy principles. Dkt. 8, p. 12. In Petitioner's first PRP, he asserted the trial court violated Petitioner's Fifth Amendment rights when the judge punished Petitioner twice for the same conduct by aggravating his sentence above the standard range for conduct already punished by the standard range established by the Legislature. Dkt. 17, Exhibit 54, pp. 5-6. After the state court of appeals dismissed the PRP, Petitioner raised this claim in his motion for discretionary review. *Id*. at Exhibits 59, 60, pp. 1, 10-12. His motion was denied and Petitioner filed a motion to modify the Commissioner's ruling, which was denied by the state supreme court without comment. *Id*. at Exhibits 61-63. Petitioner raised Ground 5 in his first PRP filed with the state court of appeals and he raised Ground 5 before the state supreme

1  court in his motion for discretionary review. Therefore, the Court finds Ground 5 was properly

2  exhausted. *See Densmore v. Glebe*, 2016 WL 3636907, at *3-4 (W.D. Wash. March 29, 2016)

3  (finding proper exhaustion when the petitioner raised the ground in the reply of his PRP and in

4  the motion for discretionary review).

5      2.  *Ground 6*

6      In Ground 6 of the Petition, Petitioner contends his rights under the Confrontation Clause

7  were violated when R.W.'s statements were admitted through hearsay. Dkt. 8, p. 14.

8  Specifically, Petitioner alleges Ms. West, Officer Tscheuschner, Officer Deccio, Detective

9  Baker, and Dr. Duralde testified to statements made by R.W., who was determined to be

10 unavailable for trial. *Id*. Respondent asserts Petitioner only exhausted this ground as to R.W.'s

11 statements made to Dr. Duralde. Dkt. 16, p. 14.

12     On direct appeal, Petitioner's raised a confrontation claim regarding R.W.'s statements

13 made to Dr. Duralde and other witnesses, including Ms. West, Officers Tscheuschner and

14 Deccio, and Detective Baker. Dkt. 17, Exhibit 14, pp. 51-56. However, in his petition for review

15 filed with the state supreme court, Petitioner alleged only that the state court of appeals erred

16 when it found the introduction of R.W.'s statements to Dr. Duralde at trial violated the

17 Confrontation Clause, but found admitting the improper testimony was harmless. *Id*. at Exhibit

18 28, pp. 2, 18 (page 2 referencing only statements made to a doctor, page 18 identifying Dr.

19 Duralde). Petitioner did not raise Ground 6 in any of his PRPs. *See* Dkt. 17, Exhibits 54-55, 65.

20     Petitioner argues he raised the entirety of Ground 6 to the state supreme court. Dkt. 24, p.

21 57. Petitioner cites to the portion of his petition of review which outlined the facts of his case.

22 The entire ground, however, was not raised in the section identifying the issues presented for

23 review or in the argument section of the brief. *See id*. at pp. 2, 4, 18. Thus, the Court does not

24

find Petitioner sufficiently placed the highest state court on notice that he was raising the entirety of Ground 6 in the petition for review filed with the state supreme court.

As Petitioner did not raise all the allegations contained in Ground 6 to the highest state court on direct appeal or in any of his PRPs, he did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred when out-of-court statements made by R.W. were admitted through the testimony of Ms. West, Officers Tscheuschner and Deccio, and Detective Baker. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Larche v. Simons*, 53 F.3d 1068, 1071 (9th Cir. 1995) (the state's highest court should be given at least one opportunity to review the claims); *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992) (finding claims were unexhausted when they were not raised on every level of direct review); *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1349 (9th Cir. 1984) ("The exhaustion of state remedies doctrine limits the issues a habeas corpus petitioner may raise in federal court to the 'same claims' that are 'fairly' presented to the highest state court."). The Court finds Petitioner only properly exhausted Ground 6 as to R.W.'s statements to Dr. Duralde. Petitioner did not properly exhaust Ground 6 as to R.W.'s statements to Ms. West, Officers Tscheuschner and Deccio, and Detective Baker. Thus, the Court concludes these portions of Ground 6 were not properly exhausted.

3. *Ground 7*

In Ground 7, Petitioner challenges the sufficiency of the evidence that resulted in his conviction of second degree assault of a child (Count 40). Dkt. 8, p. 16. When discussing Ground

7 on the merits, Respondent stated Petitioner did not directly present this ground on direct appeal or in a PRP. *See* Dkt. 16, pp. 49-50.

Petitioner did not challenge the sufficiency of the evidence as to Count 40 on direct appeal or in his PRPs. Petitioner only raised sufficiency of the evidence claims regarding his possession of child pornography convictions and Counts 11 and 36 (both counts for rape of a child). *See* Dkt. 17, Exhibits 14-15, 28, 54-55, 60. In his second PRP, Petitioner alleged both his convictions for second-degree assault of a child (Count 40) and sexual exploitation of a minor (Count 41) rested on the same evidence in violation of double jeopardy principles. *See id*. at Exhibit 65. However, the claim raised in his second PRP did not allege the evidence was insufficient to convict him of second degree assault of a child (Count 40). *See id*.

Petitioner did not allege there was insufficient evidence to convict him of second degree assault of a child in his direct appeal or PRPs. Therefore, Petitioner did not give the state court a full and fair opportunity to determine if a federal constitutional violation occurred. Accordingly, Ground 7 was not properly exhausted.

B. Procedural Default

Portions of Ground 6 and Ground 7 are also procedurally defaulted. Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

The portion of Ground 6 related to R.W.'s statements made to Ms. West, Officers Tscheuschner and Deccio, and Detective Baker and Ground 7 are procedurally defaulted because if Petitioner attempted to present these claims in a subsequent PRP, the state court would find the claims barred by Washington State law. Washington State law imposes a one-year statute of limitations on filing a PRP or other post-conviction challenges. RCW § 10.73.090. On October 7, 2013, the United States Supreme Court denied Petitioner's petition for certiorari from Petitioner's second direct appeal. *Grenning v. Washington*, 571 U.S. 865 (2013). The time to file a petition or motion for post-conviction relief expires one year from the date the U.S. Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. *See* RCW 10.73.090(1), (3)(c). In Petitioner's case, the time for filing a PRP expired on October 7, 2014. As the one-year statute of limitations has passed, Petitioner is barred from filing a subsequent PRP. *See id.* at (1).

Further, under Washington State law, the state court of appeals will not consider a second or successive PRP unless the petitioner certifies he has not filed a previous petition on similar grounds and shows good cause as to why he did not raise the grounds in the previous PRP. *See* RCW 10.73.140. Here, Petitioner raised Ground 6 in a previous petition. As such, he cannot certify he has not filed a previous petition on similar grounds. Thus, the unexhausted portions of Ground 6 are also subject to an implied procedural bar because these grounds would be prohibited by an independent, adequate, and mandatory rule of state procedure, RCW §10.73.140, making a return to state court futile. *See Bolar v. Luna*, 2007 WL 1103933, *11 (W.D. Wash. April 10, 2007).

As Petitioner would be precluded from asserting the unexhausted portions of Ground 6 and Ground 7 in the state court, these claims are procedurally defaulted in federal court. *See*

*Coleman*, 501 U.S. at 731-32, 735 n.1; *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Eisermann v. Penarosa*, 33 F.Supp.2d 1269, 1274 (D. Haw. 1999) ("[I]f a petitioner has never raised his federal claim to the highest state court available and is now barred from doing so by a state procedural rule, exhaustion is satisfied because no state remedy remains available, but the petitioner has procedurally defaulted on his claim.").

However, the procedural default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (*citing Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (*citing Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

1    Here, Petitioner argues only that Ground 6 is exhausted. Dkt. 24, p. 57. He does not

2    provide any arguments regarding the exhaustion, or lack thereof, of Ground 7. *See* Dkt. 8, 24.

3    Petitioner has not shown cause for the procedural default. He also has not shown actual prejudice

4    because he has not shown the errors at his trial worked to his actual and substantial disadvantage,

5    infecting his entire trial with an error of constitutional dimensions. Furthermore, Petitioner has

6    not provided new, reliable evidence showing he is actually innocent, and therefore this is not the

7    kind of extraordinary instance where this Court should review Ground 6, in full, or Ground 7

8    despite the absence of a showing of cause. Therefore, this Court is barred from reviewing the

9    portion of Ground 6 related to testimony regarding statements made by R.W. to Ms. West,

10   Officers Tscheuschner and Deccio, and Detective Baker and Ground 7 on the merits.

11   Accordingly, the undersigned finds Petitioner is not entitled to relief as to Ground 6, in part, or

12   Ground 7, in full, and recommends these claims be dismissed. *See Casey*, 386 F.3d 896.

13       **II.      Review of State Courts' Adjudication**

14       Respondent maintains the state courts' adjudication of Grounds 1-5, the remaining

15   portion of Ground 6, and Grounds 7-9 was not contrary to, or an unreasonable application of,

16   clearly established federal law. Dkt. 16, 26, 53.[2]

17       A.   Standard of Review

18       Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis

19   of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision

20   that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

21   determined by the Supreme Court of the United States." In interpreting this portion of the federal

22   habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established

23

24   [2] The Court has found Ground 7 was unexhausted and is procedurally barred; however, Respondent also
     argued Ground 7 should be denied on the merits. *See* Dkt. 16, pp. 48-50.

Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

Although Supreme Court precedent provides the only relevant source of clearly established federal law for Anti-Terrorism Effective Death Penalty Act ("AEDPA") purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly established.'" *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir. 2000).

The AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the

1  record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at

2  1398.

3      B.  <u>Imposition of Consecutive Sentences (Grounds 1 and 2)</u>

4      In Ground 1, Petitioner contends his constitutional rights were violated when the State

5  failed to provide notice of its intent to seek an exceptional sentence in the charging document –

6  the Fifth Amended Information. *See* Dkt. 8, p. 5. In Ground 2, Petitioner alleges his rights were

7  violated when the trial court, not the jury, made findings of fact to support the aggravating

8  factors resulting in an exceptional sentence. *Id* at p. 7.

9      1.  *Factual Background*

10      On June 18, 2004, a jury found Petitioner guilty of 51 felonies involving assault and

11  sexual crimes against two minors, as well as 20 counts of possession of child pornography. *See*

12  Dkt. 17, Exhibit 7, pp. 970-81, 1000; *Grenning*, 142 Wash. App. at 530. On August 13, 2004, the

13  State filed a notice of the State's intent to seek an exceptional sentence. Dkt. 17, Exhibit 10.

14  Approximately one and a half months later, on October 1, 2004, the trial court made an oral

15  ruling sentencing Petitioner to 1,404 months of incarceration. *See id*. at Exhibit 7, pp. 999-1033.

16  On October 22, 2004, the trial judge signed the judgment, sentencing, and findings of fact and

17  conclusions of law. *Id*. at pp. 1034-43. The trial court determined Petitioner had an offender

18  score of 99. *Id*. at p. 1030. The trial court then used a sentencing structure which (1) imposed the

19  high end of the standard sentencing range for each conviction, (2) ran each sentence concurrently

20  with other convictions for similar crimes, and (3) ran the sentences for each group of discrete

21  convictions consecutively. *See id*. at pp. 1031-32; Dkt. 17, Exhibit 11.

22      In the findings of fact and conclusions of law, the trial court provided the following

23  reasons for the exceptional sentence: (1) Petitioner had multiple victims; (2) the failure to impose

24

an exceptional sentence would result in "free crimes" allowing Petitioner to escape punishment for his crimes; (3) the failure to impose an exceptional sentence would result in a sentence that is clearly too lenient in light of purposes of the Sentencing Reform Act; (4) Petitioner's conduct was more egregious than a typical case because the jury found Petitioner guilty of multiple counts of rape, attempted rape, molestation, and sexual exploitation; (5) the jury found Petitioner committed second-degree assault of a child with sexual motivation; (6) Petitioner committed multiple penetrations and attempted penetrations of his victims' anuses and multiple molestations and exploitations of his victims over a prolonged period of time, which is more degrading and has a more serious impact on the victim than a single act. *See* Dkt. 17, Exhibit 12.

After all Petitioner's 20 child pornography convictions were reversed on direct appeal, the State declined to retry to the 20 counts of child pornography, but requested the sentencing structure used at the first sentencing also be used for resentencing. *See* Dkt. 17, Exhibits 21, 38. On October 26, 2010, the trial court adopted the State's recommendation and Petitioner was resentenced using the requested sentencing structure, resulting in Petitioner receiving an offender score of 96 and a sentence totaling 1,392 months. *See* Dkt. 17, Exhibits 38-39.

2.  *Adequate Notice (Ground 1)*

In the Petition, Petitioner alleges his constitutional rights were violated when the State failed to provide notice of its intent to seek an exceptional sentence in the charging document – the Fifth Amended Information. *See* Dkt. 8, p. 5. The Sixth Amendment guarantees criminal defendants the right to be informed of the nature of the charges against them so as to permit adequate preparation of a defense. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ...."); *In re Oliver*, 333 U.S. 257, 273–74 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948). To

1   determine whether a defendant has received constitutionally adequate notice, a reviewing court

2   looks primarily to the charging document. *See Gautt v. Lewis,* 489 F.3d 993, 1003 (9th Cir.

3   2007). As the Ninth Circuit has explained, "for purposes of AEDPA's 'clearly established

4   Federal law' requirement, it is 'clearly established' that a criminal defendant has a right,

5   guaranteed by the Sixth Amendment and applied against the states through the Fourteenth

6   Amendment, to be informed of any charges against him, and that a charging document, such as

7   an information, is the means by which such notice is provided." *Id.* at 1004.

8       In finding Petitioner received adequate notice of the charges against him, the state court

9   of appeals stated:

10      On April 19, 2012, the Washington State Supreme Court issued *State v. Siers*, 174
        Wn.2d 269, 274 P.3d 358 (2012), in which it revisited its *Powell* decision and
11      held:

12          [A]n aggravating factor is not the functional equivalent of an essential
            element, and, thus, need not be charged in the information. Because the
13          charging document here contained the essential elements of the crimes
            charged and Siers was given notice prior to trial of the State's intent to
14          seek an aggravated sentence, Siers's due process rights were not violated.

15          . . .

16          We, therefore, overrule this court's decision [ ... ] and adopt the position
            advanced by the lead opinion in *Powell* to the effect that, so long as a
17          defendant receives constitutionally adequate notice of the essential
            elements of a charge, "the absence of an allegation of aggravating
18          circumstances in the information [does] not violate [the defendant's] rights
            under article 1, section 22 of the Washington Constitution, the Sixth
19          Amendment to the United States Constitution, or due process." *Powell,*
            167 Wn.2d at 687.
20
        *Siers*, 174 Wn.2d at 271, 276–7 (second and third alterations in original). *Siers*
21      controls here.

22          Consistent with *Siers*, Grenning received constitutionally adequate notice
            of the essential elements of the substantive sex-crime charges against him,
23          as well as notice of the State's intent to seek an exceptional sentence. In
            2004, immediately after the jury's verdict, the State first gave Grenning
24

notice of its intent to seek an exceptional sentence for his exceptionally large number of sex-crimes against children, which, because of his exceptionally high offender score, would otherwise go unpunished. Thereafter, the State continued to pursue Grenning's exceptional sentence during his previous appeal and through his 2010 resentencing, at which the State reiterated its intent to seek the same exceptional consecutive sentences it had sought and the trial court had imposed in 2004 (with the exception of first adjusting the offender score and subtracting 12 months attributable to the reversed 20 child pornography possession convictions, which the State chose not to retry). [Fn. 38 We note that, during the 2010 resentencing, the State did not attempt to assert different aggravating factors or to run all the individual standard-range sentences for Grenning's 51 convictions consecutively; again, it ran only groups of sentences consecutively as before. Thus, Grenning cannot claim lack of notice based on any change in the State's recommendation over a period of at least six years.] *Grenning*, 169 Wn.2d at 47.

. . .

Here, with ample notice to Grenning, both the trial court in 2004 and the resentencing court in 2010 imposed standard-range sentences for each of his 51 affirmed convictions. Unlike Powell's above-the-standard-range exceptional sentence for his single murder conviction or Siers' high-end-standard—range sentence "'to give some weight to the jury's finding of a good Samaritan aggravator,'" Grenning's sentences for his 51 child-sex-abuse convictions became exceptional only in the running of sub-groups of standard-range sentences consecutively. In accord with the *Siers* holding that the State need not charge aggravating sentencing factors in the information, we hold that the State did not violate Grenning's due process rights by alleging the supporting exceptional-sentence aggravating factors following the jury's 2004 verdict instead of in the information. [Fn. 41 We acknowledge that, unlike Grenning, Siers received pre-trial notice of the State's intent to seek an exceptional sentence. Nevertheless, Grenning's having received notice after the jury's verdict was constitutionally adequate notice under the plain language of the *Siers* holding. Furthermore, because Grenning shows neither lack of actual notice nor prejudice flowing from the State's post-verdict notice of its intent to seek an exceptional sentence, the timing of the State's notice here provides no reason to reverse the resentencing court's re-imposition of consecutive standard-range sentences for groups of Grenning's 51 previously affirmed convictions for sex crimes against children.]

Dkt. 17, Exhibit 44, pp. 14-16; *State v. Grenning*, 169 Wash. App. 1036 (2012) (some footnotes omitted).

1    Petitioner has not shown, nor does the Court find, that the State failed to adequately place

2    Petitioner on notice of the charges against him. The Fifth Amended Information put Petitioner on

3    notice of the underlying charges, but did not include notice of the State's intent to seek an

4    exceptional sentence. *See* Dkt. 17, Exhibit 8. Petitioner was convicted on 51 counts named in the

5    Fifth Amended Information. *See id*. at Exhibit 7, pp. 970-84. Prior to Petitioner's first

6    sentencing, the State filed its intent to seek an exceptional sentence. There is also some evidence

7    showing Petitioner was verbally on notice of the State's intent to seek an exceptional sentence at

8    the initiation of his criminal case. *See id*. at Exhibit 7, p. 990. At both Petitioner's first and

9    second sentencings, the trial court sentenced Petitioner within the standard sentencing range for

10   each conviction. *See id*. at pp. 1031-32; Dkt. 17, Exhibits 11, 12, 38-39. The trial court then ran

11   each sentence concurrently with other similar crimes (e.g., all sentences for sexual exploitation

12   of minor regarding R.W. were sentenced to run concurrently). *See* Dkt. 17, Exhibits 7, 38-39; *see*

13   *also* Dkt. 17, Exhibit 57, App. C. The trial court then issued Petitioner an exceptional sentence

14   by running the sentences for each discrete group of convictions consecutively (e.g., the sentence

15   for the group of child molestation convictions regarding R.W. ran consecutively to the sentence

16   for the group of sexual exploitation of a minor convictions regarding R.W.). *See* Dkt. 17,

17   Exhibits 7, 38-39; *see also* Dkt. 17, Exhibit 57, App. C.

18   Under federal law, Petitioner had a right to be notified of the charges against him. *See*

19   *Gautt*, 489 F.3d at 1004. Petitioner has not shown he is also entitled, under federal law, to be

20   notified in the charging document of the State's intent to seek an exception sentence. *See Brady*

21   *v. Miller-Stout*, 2013 WL 4522478, at *6 (W.D. Wash. Aug. 27, 2013) (citing *U.S. v. O'Brien*,

22   560 U.S. 218 (2010) ("A charging document needs to set forth the elements of the crime, not

23   sentencing information."). Simply because the State sought to have Petitioner's sentences

24

1    imposed consecutively after Petitioner was convicted does not demonstrate Petitioner was denied

2    adequate notice of the charges against him. As such, Petitioner fails to show the State was

3    required to provide notice in the Fifth Amended Information that it intended to seek an

4    exceptional sentence or that it was required to provide notice in the Fifth Amended Information

5    of the factors which would be argued to impose an exceptional sentence in the Fifth Amended

6    Information.

7        Therefore, Petitioner has not shown, nor does the Court find, Petitioner's constitutional

8    right to receive notice of the charges against him was violated when the State failed to inform

9    Petitioner in the charging document that it intended to seek an exceptional sentence. *See Thomas*

10    *v. Virga*, 2011 WL 4578515, at *5 (C.D. Cal. June 17, 2011) (finding the charging document –

11    an information – provided defendant with all the constitutional notice required to enable the

12    defendant to defend against the charges that rendered him subject to a consecutive sentencing

13    scheme).

14        Petitioner has failed to demonstrate the state court's conclusion that Petitioner's

15    constitutional rights were not violated when he did not receive notice of the State's intent to seek

16    an exceptional sentence until after the trial was contrary to, or an unreasonable application of,

17    clearly established federal law. Accordingly, Ground 1 should be denied.

18        3.  *Exceptional Factors Found by Judge (Ground 2)*

19        In Ground 2, Petitioner alleges his rights were violated when the trial court, not the jury,

20    made findings of fact to support the aggravating factors resulting in an exceptional sentence. Dkt.

21    8, p. 7. Petitioner contends a jury was required to make a finding regarding the aggravating

22    factors. *See Id.*; Dkt. 24.

23

24

1    In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held

2    that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

3    beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

4    reasonable doubt." *Apprendi*, *530 U.S. a*t 490. Four years later the Supreme Court held "the

5    'statutory maximum' for *Apprendi* purposes is the maximum a judge may impose *solely on the*

6    *basis of the facts reflected in the jury verdict or admitted by defendant*." *Blakely v. Washington*,

7    542 U.S. 296, 303 (2004) (emphasis in original). "In other words, the relevant 'statutory

8    maximum' is not the maximum sentence a judge may impose after finding additional facts, but

9    the maximum he may impose *without* any additional findings. When a judge inflicts punishment

10   that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law

11   makes essential to the punishment,'... and the judge exceeds his proper authority." *Id*. at 303-04

12   (emphasis in original) (internal citation omitted). However, "[t]he decision to impose sentences

13   consecutively is not within the jury function that 'extends down centuries into the common

14   law.'" *Oregon v. Ice*, 555 U.S. 160, 168 (2009) (quoting *Apprendi*, 503 U.S. at 477).

15   In determining the trial court did not err when sentencing Petitioner, the state court of

16   appeals held:

17   We now address Grenning's argument that . . . the resentencing court, and not the
     jury, found former RCW 9.94A.535's aggravating circumstances and this judicial
18   fact-finding violated *Blakely* and *Apprendi*. This [ ] argument ignores and fails in
     light of the United States Supreme Court's decision in *Ice* and our Supreme
19   Court's subsequent decision in [*State v.*] *Vance*[, 168 Wash.2d 754 (2010)]. We
     hold the resentencing court correctly relied on the alternative basis of RCW
20   9.94A.589(1)(a) and former RCW 9.94A.535 to impose consecutive sentences on
     Grenning.
21
22   In *Ice,* the United States Supreme Court held that an Oregon statutory sentencing
     scheme was constitutional, even though the sentencing scheme allowed the court,
     and not the jury, to find facts that would permit imposition of consecutive
23   sentences. The *Ice* court explained that the imposition of consecutive sentences
     did not implicate *Blakely* and *Apprendi* because:
24

1

2
> The decision to impose sentences consecutively is not within the jury function that "extends down centuries into the common law." *Apprendi*, 530 U.S. at 477.... Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of the state legislatures.

3

4

5
*Ice*, 555 U.S. at 168. A year later, our Supreme Court recognized that *VanDelft*, in which it had held that a jury must find facts that supported the imposition of consecutive sentences, was no longer good law:

6

7
> *Ice* held that under *Blakely* and *Apprendi* ... a sentencing judge does not run afoul of the Sixth Amendment by finding facts necessary to impose consecutive, rather than concurrent, sentences for discrete crimes. *Ice*, 129 S.Ct. at 717.

8

9
> ....

10

11
> In *VanDelft* we applied *Apprendi* and *Blakely* to find that the Sixth Amendment requires a jury, not a judge, to find facts to support consecutive sentences.... *Ice* squarely overrules *VanDelft*.

12
*Vance*, 168 Wn.2d at 762.

13

14

15

16
> Here, *Vance* thus permitted the resentencing court to find a former RCW 9.94A.535 aggravating circumstance; contrary to Grenning's argument, a jury was not required to make this finding. The resentencing court properly used those aggravating circumstances to impose consecutive standard-range sentences for Grenning's multiple discrete crimes under RCW 9.94A.589(1)(a). Accordingly, we hold that the resentencing court did not engage in impermissible judicial fact-finding and that it did not abuse its discretion by imposing consecutive sentences.

17
Dkt. 17, Exhibit 44, pp. 17-19; *State v. Grenning*, 169 Wash. App. 1036 (2012) (footnotes

18
omitted).

19
Here, Petitioner was sentenced within the standard range for each conviction and the trial

20
court set each sentence to run concurrently with similar convictions. The trial judge then, using

21
aggravating factors, ran the sentences for each discrete group of convictions consecutively.

22
Petitioner contends the decision to impose the consecutive sentences was based on aggravating

23
factors that had to be determined by a jury. However, Petitioner was not sentenced above the

24

statutory maximum for each crime as set by the state legislature; rather, he was sentenced within the standard range for each conviction, each sentence ran concurrently within the similar group of convictions, and the trial court ran each discrete group of sentences consecutively.

As explained in *Ice*, "[t]he decision to impose sentences consecutively is not within the jury function[.]" 555 U.S. at 168. Therefore, it was within the trial court's discretion, not the jury, to impose Petitioner's sentences consecutively. Further, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994). So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Makal v. State of Arizona,* 544 F.2d 1030, 1035 (9th Cir. 1976). The trial court's decision to impose consecutive sentences was within the trial court's discretion and is not within this Court's purview.

Therefore, Petitioner has failed to demonstrate the state court's finding that Petitioner's right to a jury trial – the jury determining aggravating factors – was not violated when the trial judge imposed a consecutive sentencing scheme was not contrary to, or an unreasonable application of, clearly established federal law. *See Taylor v. McDonald*, 2011 WL 3021838, at *15-17 (S.D. Cal. March 7, 2011) (finding the state court did not unreasonably apply federal law when it determined the trial court did not violate the petitioner's federal constitutional right to a jury trial in imposing consecutive sentences); *Colon v. Hedgepeth*, 2010 WL 1798230, at *4 (E.D. Cal. May 3, 2010) (internal quotations omitted) ("Because a trial judge makes the concurrent-vs.-consecutive sentencing decision after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense and the

1  decision does not implicate the defendant's right to a jury trial on facts that are the functional

2  equivalent of elements of an offense, the decision to impose consecutive sentences does not

3  violate the defendant's constitutional right to a jury trial."). Accordingly, Ground 2 should be

4  denied.

5      C.  Denial of Discovery (Ground 3)

6      Petitioner alleges the state court erred when it restricted his ability to obtain discovery. Dkt.

7  8, p. 8. Specifically, Petitioner contends the state court issued a protective order which required

8  Petitioner's legal team to only view and analyze the mirror-image copies of his three computer

9  drives in a government building. *See id*.; Dkt. 24, pp. 29-44. Petitioner contends he was unable to

10  adequately prepare a defense because he could not find an expert willing to analyze the hard drives

11  in the government building. *See* Dkt. 24, pp. 29-44.

12      "[I]t is not the province of a federal habeas court to reexamine state-court determinations

13  on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As stated by the Ninth

14  Circuit, "[o]n federal habeas [the Court] may only consider whether the petitioner's conviction

15  violated constitutional norms." *Jammal v. Van de Kamp*, 926 F.3d 918, 919 (9th Cir. 1991). "A

16  state court's procedural or evidentiary ruling is not subject to federal habeas review unless the

17  ruling violates federal law, either by infringing upon a specific federal constitutional or statutory

18  provision or by depriving the defendant of the fundamentally fair trial guaranteed by due

19  process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). Discovery in criminal cases is

20  ordinarily a matter of state law, the violation of which does not provide a basis for federal habeas

21  relief. *Coleman v. Calderon,* 150 F.3d 1105, 1112 (9th Cir.1998) (citing *Estelle*, 502 U.S. at 67–

22  68), *rev'd on other grounds*, *Calderon v. Coleman*, 525 U.S. 141 (1998).

23

24

1    Since the decision to restrict discovery is within the purview of the trial court, the issue

2    before the Court in Ground 3 is "whether the trial court committed an error which rendered the

3    trial so arbitrary and fundamentally unfair that it violated federal due process." *Reiger v.*

4    *Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986) (quotations omitted) (discussing that the issue

5    was not whether the introduction of photographs violated state law evidentiary principles, but

6    whether it violated due process). Criminal defendants are constitutionally assured "a meaningful

7    opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984).

8    However, "[t]here is no constitutional right to discovery in a criminal case." *Weatherford v.*

9    *Bursey*, 429 U.S. 545, 559 (1997). Furthermore, "the Due Process Clause has little to say

10   regarding the amount of discovery which the parties must be afforded." *Id.* (quoting *Wardius v.*

11   *Oregon*, 412 U.S. 470, 474 (1973)). Under the Due Process Clause, a prosecutor is only required

12   to "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of

13   a fair trial." *U.S. v. Bagley*, 473 U.S. 667, 675 (1985).

14   In this case, the trial court ordered Petitioner be provided with mirror-image copies of

15   computer hard drives acquired during the execution of search warrants. *See* Dkt. 17, Exhibit 9.

16   The trial court, however, entered a protective order stating the mirror-image copies could only be

17   viewed and tested by the defense expert in a secured location in the "County-City Building"

18   between the hours of 8:30 a.m. and 4:30 p.m., Monday through Friday. *Id*. The "County-City

19   Building" is where the trial court and Tacoma police station are located. The trial court also

20   ordered that the mirror-image drives remain in the secured location at all times. *Id*. The mirror-

21   image hard drives could only be viewed by Petitioner, his attorney, and the defense expert. *Id*.

22   Petitioner argued, on direct appeal, that the protective order was unduly restrictive

23   because it resulted in a denial of independent testing. *See* Dkt. 17, Exhibit 14, pp. 40-48. The

24

REPORT AND RECOMMENDATION - 28

state court of appeals concluded the protective order was unduly restrictive for the child

pornography charges and reversed Petitioner's 20 counts of possession of child pornography. *Id*.

at Exhibit 21, pp. 13-14; *Grenning*, 142 Wash.App. at 536. The state court of appeals, however,

found the discovery provided was adequate for Petitioner's remaining 51 charges of first degree

child rape, attempted first degree child rape, first degree child molestation, sexual exploitation of

a minor, and second degree assault of a child. Dkt. 17, Exhibit 21, p. 15; *Grenning*, 142

Wash.App. at 538-39.

In finding Petitioner was provided with adequate discovery for the remaining 51 charges,

the state court of appeals found:

> The trial court's protective order was not unduly restrictive for the first degree child rape, attempted first degree child rape, first degree child molestation, sexual exploitation of a minor, or second degree assault of a child. Grenning was given access to mirror-image copies of his hard drives. Grenning's expert stated that, "[T]he need to store or retain additional copies of any of the image files that the State so ardently seeks to protect is not anticipated." Grenning does not argue he did not have copies or access to the hard drive copies; rather he challenges the protective order restriction that the hard drives could not be removed from the Tacoma police station.
>
> In [*State v.*] *Boyd*[, 160 Wn.3d 424 (2007)], the Court reasoned that defendants should have access outside of a State facility to mirror-image copies of the defendant's computer hard drive in child pornography cases because forensic analysis "might show that someone other than the defendant caused certain images to be downloaded. It may indicate when the images were downloaded. It may reveal how often and how recently images were viewed and other useful information based on where the images are stored on the device." *Boyd*, 160 Wash.2d at 436, 158 P.3d 54. The *Boyd* Court reasoned that defense experts could not conduct such detailed examinations of a hard drive in the State facility.
>
> In Grenning's first degree child rape, attempted first degree child rape, first degree child molestation, sexual exploitation of a minor, and second degree assault of a child charges, the discovery provided was adequate. For these charges, the factors the *Boyd* Court considered are not at issue. It is irrelevant (1) "how the evidence made its way onto the computer[,]" (2) who caused the "images to be downloaded[,]" (3) "when the images were downloaded[,]" (4) "how recently [the] images were viewed[,]" and (5) "where the images are stored on the device." *Boyd*, 160 Wash.2d at 436, 158 P.3d 54.

1

2

3

4

5

6

7

In the child rape, molestation, exploitation, and assault charges, it does not matter if Grenning purposefully possessed, downloaded, or viewed the pictures. The pictures were entered into evidence because they depict Grenning raping and molesting RW and BH. The issue was whether Grenning committed these acts. The three cases consolidated for *Boyd* involved commercial child pornography. *Boyd*, 160 Wash.2d at 429–31, 158 P.3d 54. They did not involve child pornography that depicted the *defendants* engaging in sexual acts with minors. *Boyd*, 160 Wash.2d at 429–31, 158 P.3d 54. Additionally, *Boyd* did not address charges beyond child pornography possession. *Boyd*, 160 Wash.2d at 429–31, 158 P.3d 54. Because the factors the *Boyd* Court considered are not at issue here, we decline to extend *Boyd's* holding to charges other than child pornography possession.

8

9

10

11

12

Additionally, even if the trial court committed error in ruling on discovery, Grenning must demonstrate that the error was prejudicial and that it materially affected the trial outcome. *State v. Linden*, 89 Wash.App. 184, 190, 947 P.2d 1284 (1997). Grenning's computer expert had access to mirror-image hard drive copies. He was able to perform tests on the hard drives. The pictures were entered as evidence of the acts that Grenning committed. In some of the pictures, Grenning's face is visible. They depict Grenning raping and molesting RW and BH. Both BH's mother and older brother testified at trial. They positively identified the child in some of the photographs as BH.

13

14

15

16

Considering that (1) Grenning had a computer expert that could perform tests on the hard drives; (2) he did not request further duplication of the pictures; (3) the testimony of BH, his mother, and brother; and (4) the nature of what the pictures depict, access to the hard drives in a location other than the secured room in the police station would not have materially affected the trial outcome. Thus, we affirm Grenning's convictions for child rape, attempted child rape, child molestation, sexual exploitation of a minor, and assault of a child.

17

Dkt. 17, Exhibit 21, pp. 16-17; *Grenning*, 142 Wash. App. at 538–40 (internal record citations

18

omitted).

19

In Ground 3, Petitioner alleges the state court erred by unduly restricting his ability to

20

view evidence outside of the Tacoma police station. *See* Dkt. 8. Petitioner is essentially

21

challenging the state court's application of state court procedural rules. As discovery matters are

22

governed by state court rules and subject to the trial court's discretion, any challenge to the

23

implementation of the protective order does not provide a basis for federal habeas relief. *See*

24

1    *Estelle*, 502 U.S. at 67-68; *Coleman v. Glebe*, 2015 WL 4210831, at \*16 (W.D. Wash. Apr. 1,

2    2015) ("In Washington, criminal case discovery is governed by court rule, and enforcement of

3    the parties' discovery obligations is subject to the trial court's discretion."). The Court also notes

4    Petitioner has not identified, nor does the Court find, any clearly established federal law holding

5    Petitioner's inability to remove hard drives containing sensitive material violated his constitutional

6    rights. *See* Dkt. 8; 24; *see also* Dkt. 16; *U.S. v. Wright*, 625 F.3d 583, 614-17 (9th Cir. 2010)

7    *superseded by statute on other grounds as noted in United States v. Brown,* 785 F.3d 1337 (9th Cir.

8    2015) (finding the defendant was provided with "ample opportunity" to examine evidence when he

9    was permitted to access the hard drive for a period of fourteen months in a secure location).

10    Furthermore, there is no evidence showing the failure to review the hard drives outside

11   the Tacoma police station rendered Petitioner's trial fundamentally unfair regarding his

12   convictions -- first degree child rape, attempted first degree child rape, first degree child

13   molestation, sexual exploitation of a minor, and second degree assault of a child. As the state

14   court correctly found, the images on the hard drives were evidence that Petitioner committed the

15   above stated crimes. There is no evidence Petitioner or his counsel or expert needed to remove

16   the hard drives from the Tacoma police station to adequately prepare a defense to these charges.

17   For example, in preparing for Petitioner's defense, Petitioner did not need to have an expert

18   determine how the evidence ended up on the computer, who downloaded the images, or how

19   recently the images were viewed. The Court notes Petitioner does not contest that he took

20   pictures located on the hard drives. *See* Dkt. 24, p. 72.

21    Moreover, the jury was provided with evidence in addition to the photographs found on

22   the hard drives. *See* Dkt. 17, Exhibits 5-6. Objects, instant message chats, and an audio clip

23   discovered at Petitioner's home were admitted at trial. *See* Dkt. 17, Exhibit 3-6. The jury also

24

1  heard testimony from police detectives, the victims' family members, and one of the victims. *See*

2  *id.* at Exhibits 3-7. Petitioner's expert was able to view and analyze the hard drives in the secured

3  location. *See id.* at Exhibit 9. As such, Petitioner has failed to show the protective order rendered

4  Petitioner's trial fundamentally unfair in violation of due process. *See Arellano v. Harrington*,

5  2012 WL 4210297, *30 (E.D. Cal. Sept. 18, 2012) (finding additional evidence, apart from the

6  challenged testimony, supported a finding of guilt and therefore admitting the challenged

7  testimony did not render the petitioner's trial fundamentally unfair).

8         Petitioner does not argue, nor is there evidence showing, the prosecutor improperly

9  withheld favorable, material evidence in violation of *Brady* or otherwise violated Petitioner's

10  constitutional rights. Further, there is no evidence Petitioner's inability to access the hard drives

11  outside of the Tacoma police station rendered Petitioner's trial so arbitrary and fundamentally

12  unfair that it violated due process.

13         A challenge to a state discovery ruling is not a sufficient basis for granting federal habeas

14  relief. Further, regardless of any alleged error the trial court made in issuing the protective order,

15  Petitioner has not shown his due process rights were violated when he was not allowed to view and

16  analyze the mirror image hard drives outside of the Tacoma police station. Therefore, Petitioner

17  has failed to demonstrate the state court's conclusion that the trial court's decision to issue a

18  protective order was contrary to, or an unreasonable application of, clearly established federal law.

19  Accordingly, Ground 3 should be denied.

20         D.  Double Jeopardy (Grounds 4 and 5)

21         In Grounds 4 and 5, Petitioner contends his convictions and sentence violate double

22  jeopardy principles.

23

24

1          1.  *Legal Standard*

2          The Double Jeopardy Clause guarantees that no person shall "be subject of the same

3   offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. It affords three basic

4   protections: "'[It] protects against a second prosecution for the same offense after acquittal. It

5   protects against a second prosecution for the same offense after conviction. And it protects

6   against multiple punishments for the same offense.'" *Ohio v. Johnson*, 467 U.S. 493, 498 (1984)

7   (quoting *Brown v. Ohio,* 432 U.S. 161, 165 (1977) (other citations omitted)). In both the

8   multiple punishment and multiple prosecution contexts, the Supreme Court has concluded that

9   where the two offenses for which the defendant is punished or tried cannot survive the "same-

10  elements" test, the double jeopardy bar applies.  *See, e.g., Brown*, 432 U.S. at 168-169;

11  *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (multiple punishment); *Gavieres v.*

12  *United States*, 220 U.S. 338, 342 (1911) (successive prosecutions).

13         However, an offender may be charged, convicted, and sentenced for multiple offenses

14  without violating the Double Jeopardy Clause. *Garrett v. United States*, 471 U.S. 773, 779

15  (1985). Where consecutive sentences are imposed at a single trial, the Double Jeopardy Clause

16  does no more than prevent the sentencing court from prescribing greater punishment than the

17  legislature intended. *Id*. at 794; *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Further, a

18  sentence enhancement is not considered a multiple punishment for an offense. *Monge v.*

19  *California,* 524 U.S. 721, 728 (1998); *see also United States v. Blocker*, 802 F.2d 1102, 1104–05

20  (9th Cir. 1986); *May v. Sumner*, 622 F.3d 997, 999 (9th Cir. 1980).

21

22

23

24

2.  *Convictions violated double jeopardy (Ground 4)*

In Ground 4, Petitioner contends his right to be free from double jeopardy was violated when he was convicted of both sexual exploitation of a minor and second-degree assault of a child with the same evidence. Dkt. 8, p. 10; Dkt. 24, pp. 45-52.

When dismissing Petitioner's PRP, the state supreme court rejected Petitioner's double jeopardy claim, stating:

> Mr. Grenning contends that his convictions for assault of a child in the second degree count XL) and for sexual exploitation of a minor (court XLI) violate double jeopardy principles. The charges were based on a set of photographs showing a child in sexually explicit poses. According to Mr. Grenning, and the State does not dispute this, the photographs show the child with wires attached to his nipples and genitals. Mr. Grenning claims he is being punished twice for this one incident.
>
> As charged in this case, assault of a child in the second degree required the State to prove that Mr. Grenning assaulted a child under the age of 13 with the intent to commit a felony. RCW 9A.36.021(1)(e); RCW 9A.36.130(1)(a). And the related class B felony charge of sexual exploitation of a minor required the State to prove that Mr. Grenning compelled a minor to engage in sexually explicit conduct, knowing that the conduct would be photographed or would be part of a live performance. RCW 9.68A.040(1)(b), (2).
>
> There is no apparent double jeopardy violation. The plain language of the statutes suggests that the legislature intended separate punishments. *See State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). And the different factual and legal elements show that the convictions do not offend double jeopardy principles. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536-37, 167 P.3d 1106 (2007). In particular, sexual exploitation of a minor does not require an assault, and assault on a child does not require the child to engage in sexually explicit conduct. In this instance, an assault occurred by means of the offensive attachment of wires to the child's intimate areas. *See State v. Byrd*, 125 Wn.2d 707, 702 n. 3, 887 P.2d 396 (1995) (common law battery constitutes assault). Mr. Grenning's suggestion that there was no compulsion or that the touching was not offensive because the child is shown smiling is unworthy of further comment.
>
> Moreover, where a crime requires only intent to commit some other offense, and the defendant actually commits the intended crime, he may be punished for both offenses. *In re Pres. Restraint of Fletcher*, 113 Wn.2d 42, 52-53, 776 P.2d 114 (1989). Here, the intent to commit sexual exploitation, not the completed

exploitation, supports elevating the assault to second degree. RCW 9A.36.021(1)(e). And Mr. Grenning's acts of posing the child in a sexually explicit manner and recording it with a photograph amply supports the sexual exploitation charge notwithstanding the assault. RCW 9.68.040(1)(a).

Dkt. 17, Exhibit 71, pp. 3-4 (footnote omitted).

Here, the state court correctly applied the Supreme Court "same elements" test to determine Petitioner's convictions for assault of a child in the second degree and sexual exploitation of a minor did not violate double jeopardy principles. Petitioner was convicted of both second degree assault of a child and sexual exploitation of child. Petitioner contends the same evidence was used to convict him of both.

"[I]t matters not that there is 'substantial overlap' in the evidence used to prove the two offenses, so long as they involve different statutory elements." *U.S. v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005); *see also United States v. Overton*, 573 F.3d 679, 692 (9th Cir. 2009). The crimes Petitioner was charged with are set forth in separate statutes and contain different elements. In this case, Petitioner was convicted of second degree assault of a child, which occurs when a person eighteen years of age or older assaults a child under the age of thirteen with the intent to commit a felony. *See* RCW 9A.36.130(1)(a); RCW 9A.36.021(1)(e); Dkt. 17, Exhibit 67, App. D, Fifth Amended Information, & App. E, Instructions 33-37. Petitioner was also convicted of sexual exploitation of a minor, which occurs when a person "[a]ids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance." RCW 9.68A.040(1)(b); *see* Dkt. 17, Exhibit 67, App. D, Fifth Amended Information, & App. E, Instructions 39-40, 61.

Petitioner argues the conviction for second degree assault of a child required him to sexually exploit the child; therefore, the same elements necessary to convict him of second degree assault of a child were necessary to convict him of sexual exploitation of a minor. Dkt.

24, pp. 45-52. Both crimes require different elements to convict. For example, proof of second

degree assault of a child does not require sexual exploitation of the child. Rather, it requires

Petitioner to commit assault on a child under the age of thirteen with *the intent* to commit *any*

felony. And, proof of sexual exploitation of a minor does not require a second degree assault of a

child. As each crime contains different elements, it can be presumed the Washington State

Legislature intended to permit multiple punishments for a single act or transaction. *See Overton*,

573 F.3d at 692 ("Because each statutory provision requires proof of an additional fact the other

does not, violations . . . are not the same offense under *Blockburger,* and we presume that

Congress intended to permit multiple punishments for a single act or transaction.").

Petitioner has failed to show the state court's finding that the convictions for both second

degree assault of child and sexual exploitation of a minor did not violate double jeopardy

principles was contrary to, or involved an unreasonable application of, clearly established federal

law. Accordingly, Ground 4 should be denied.

3. *Sentencing violated double jeopardy (Ground 5)*

In Ground 5, Petitioner contends the trial court's use of multiple convictions to establish

a higher standard range and use of the same multiple convictions to aggravate his sentence

violated double jeopardy principles. Dkt. 8, p. 12.

When denying review of Petitioner's first PRP, the state court of appeals rejected

Petitioner's claims that the trial court improperly relied on aggravating factors, stating:

> Petitioner fails to show any basis for his claim that his exceptional sentence is
> unwarranted. Whether it be sexual motivation, multiple victims, multiple acts,
> unpunished crime, or a too lenient standard range, the trial court had authority to
> make these findings and use them as a basis for consecutive sentences. And
> petitioner cannot show actual and substantial prejudice as the trial court clearly
> stated that it would impose the same sentence even if one aggravator survived
> judicial review.

1    Dkt. 17, Exhibit 59, p. 3.

2        When Petitioner raised Ground 5 in his motion for discretionary review, the state

3    supreme court denied review, stating:

4        Mr. Grenning next disputes some of the aggravating factors found by the trial
         court. First, he urges that the fact of multiple incidents and victims may not be
5        relied on as an aggravated factor because multiple incidents involving multiple
         victims were charged in separate counts, and all of the convictions on those
6        counts were accounted for in calculating the offender score. Next, Mr. Grenning
         contends that sexual motivation is not a proper aggravating factor as to all
7        convictions because the jury found sexual motivation only as to the second degree
         assault of a child conviction. Finally, Mr. Grenning argues that the trial court
8        improperly imposed an exceptional sentence on the basis that a standard range
         sentence would result in some crimes going unpunished and be a clearly too
9        lenient sentence. But the last factor, at least, is clearly a proper one. The
         maximum standard range is reached when the defendant's offender score is 9 or
10       more. RCW 9.94A.510. Mr. Grenning's offender score was 96. Plainly,
         concurrent standard range sentences would have resulted in most of Mr.
11       Grenning's crimes going effectively unpunished. Since the trial court stated that it
         would impose the same exceptional sentence on the basis of any one of the factors
12       it found, Mr. Grenning's sentence is sustainable.

13   Dkt. 17, Exhibit 61, pp. 3-4.

14       Here, the trial court found Petitioner had an offender score of 96 because each of his

15   convictions "need to be treated as separate units of prosecution." Dkt. 17, Exhibit 7, pp. 1029-30,

16   Exhibit 37, pp. 5, 14. There is no indication the trial court increased Petitioner's offender score in

17   light of multiple incidents/victims. Rather, the trial court calculated the offender score based on

18   the "unit of prosecution argument" and Petitioner's current convictions. *Id*. at p. 1029; *see also*

19   Dkt. 17, Exhibit 7, pp. 1000-11; RCW 9.94A.525. Further, during the resentencing, the trial

20   court noted that the state court of appeals found the sentence did "not shock the general

21   conscious, given the severity and gruesome nature of the crimes committed. Given the gravity of

22   the [Petitioner's] offenses, [the court did] not feel it's necessary to discuss the three remaining

23   factors." Dkt. 17, Exhibit 37, p. 15. The trial court stated the sentences within each discrete

24

1  group should run consecutively because there were multiple acts committed that were not part of

2  the same criminal conduct and because there was a special jury verdict finding that Petitioner

3  committed second degree assault of a child with sexual motivation. *Id.* at p. 16. Therefore,

4  Petitioner has not shown his offender score and his consecutive sentence were based on the same

5  factors.

6         However, even if his offender score and consecutive sentence were both based on the

7  same factor -- his multiple incidents/victims -- the Court finds Petitioner has not shown he is

8  entitled to relief on Ground 5.

9         First, the Court recognizes state sentencing courts must be accorded wide latitude in their

10  decisions as to punishment. *See Walker v. Endell,* 850 F.2d 470, 476 (9th Cir. 1987), *cert.*

11  *denied,* 488 U.S. 926, *and cert. denied,* 488 U.S. 981 (1988).  Generally, therefore, a federal

12  court may not review a state sentence that is within statutory limits. *See id.* Federal courts must

13  defer to the state courts' interpretation of state sentencing laws. *See Bueno v. Hallahan,* 988 F.2d

14  86, 88 (9th Cir. 1993). Further, "[w]here consecutive sentences are imposed at a single criminal

15  trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed

16  its legislative authorization by imposing multiple punishments for the same offense." *Brown*, 432

17  U.S. at 165.

18         Here, as discussed in Ground 2, Petitioner was sentenced within the standard sentencing

19  range for each count with the sentences within each group of discrete crimes running

20  concurrently. The judge then, using aggravating factors based on the jury's verdicts, ran the

21  sentences for each group of discrete convictions consecutively. Petitioner has not shown he was

22  punished twice for the same conduct. Thus, the trial court sentenced petitioner to a sentence that

23  was within its statutory authority. Petitioner has not cited, nor does the Court find, the trial court

24

1  exceeded its legislative authorization when sentencing Petitioner. *See* Dkt. 8, 24, 53; *see also*

2  *State v. Worl*, 91 Wash. App. 88, 95–96 (1998) (finding that "where the sentencing court finds

3  aggravating factors that apply to multiple offenses, the SRA [Sentencing Reform Act] permits

4  the imposition of more than one exceptional sentence and consecutive sentences. . . . Thus, the

5  trial court did not err by imposing an exceptional sentence for [one] conviction and then ordering

6  the sentences to run consecutively."). This Court may not review Petitioner's sentence and must

7  defer to the state court's interpretation of its sentencing laws.

8      Additionally, the trial court found there were other aggravating factors to warrant an

9  "exceptional sentence" (e.g. The failure to impose an exceptional sentence would result in "free

10  crimes" allowing Petitioner to escape punishment for his crimes, the failure to impose an

11  exceptional sentence would result in a sentence that is clearly too lenient in light of purposes of

12  the Sentencing Reform Act, and the jury found Petitioner committed second-degree assault of a

13  child with sexual motivation). Therefore, even if the trial court did use multiple incidents/victims

14  to increase Petitioner's offender score and aggravate his sentence and it was error, the error is

15  harmless because Petitioner does not assert the other aggravating factors violate double jeopardy

16  principles. *See Milam v. White*, 2015 WL 1965403, at *8 (W.D. Wash. Apr. 1, 2015) ("There is

17  no United States Supreme Court opinion finding that a Washington statute allowing the court to

18  find an aggravator based only on the criminal history and calculation of offender score violates

19  *Blakely*.").

20      Petitioner cites to RCW 9.94A.589, which discuss consecutive and concurrent sentences.

21  *Id*. This code provision does not, however, show that the legislature forbids a defendant from

22  having an offender score raised as a result of multiple incidents/victims. *See State v. Ehli*, 115

23  Wash. App. 556, 560-62 (2003) (finding the sentencing court properly found separate counts for

24

1  child pornography constituted separate crimes for calculating the offender score). Further, there

2  is no state law provision showing this cannot also be used as a factor for running sentences

3  consecutively.

4        For the above stated reasons, Petitioner's claim that his sentences violate the Double

5  Jeopardy Clause because the trial court used multiple incidents/victims to both increase his

6  offender score and impose an exceptional sentence is not a violation of clearly established

7  federal law. Thus, the state court's finding that Petitioner's sentences did not violate double

8  jeopardy was not contrary to, or an unreasonable application of, clearly established federal law,

9  or was not an unreasonable determination of the facts in light of the evidence presented at trial.

10  Accordingly, Ground 5 should be denied. *See Dean v. U.S.*, 137 S.Ct. 1170, 1175-76 (2017)

11  (noting the same factors are used to set both the length of separate prison terms and whether the

12  terms imposed are to run concurrently or consecutively).

13        E.  Confrontation Clause (Ground 6)

14        In Ground 6, Petitioner contends his Sixth Amendment Confrontation Clause right was

15  violated when R.W.'s statements were admitted through hearsay during Dr. Duralde's testimony.

16  Dkt. 8, p. 14.

17        The Sixth Amendment's Confrontation Clause confers upon the accused, "[i]n all

18  criminal prosecutions, ... the right ... to be confronted with the witnesses against him." U.S.

19  Const. Amend. VI. In *Crawford v. Washington*, the Supreme Court held the Confrontation

20  Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial

21  unless he was unavailable to testify, and the defendant had a prior opportunity for cross-

22  examination." 541 U.S. 36, 54-55 (2004). Only testimonial statements cause the declarant to be a

23  "witness" within the meaning of the Confrontation Clause. *See id.* at 51. "It is the testimonial

24

1  character of the statement that separates it from other hearsay that, while subject to traditional

2  limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v.*

3  *Washington*, 547 U.S. 813, 821 (2006). In *Davis*, the Supreme Court found,

> 4   Statements are nontestimonial when made in the course of police interrogation
>     under circumstances objectively indicating that the primary purpose of the
> 5   interrogation is to enable police assistance to meet an ongoing emergency. They
>     are testimonial when the circumstances objectively indicate that there is no such
> 6   ongoing emergency, and that the primary purpose of the interrogation is to
>     establish or prove past events potentially relevant to later criminal prosecution.

7  547 U.S. at 822. While some statements to individuals who are not law enforcement officers

8  could conceivably raise confrontation concerns, such statements are much less likely to be

9  testimonial than statements to law enforcement officers. *Ohio v. Clark*, 135 S. Ct. 2173, 2181

10 (2015). "Statements by very young children will rarely, if ever, implicate the Confrontation

11 Clause." *Id.* at 2182.

12      Here, Petitioner is challenging statements made by R.W. to Dr. Duralde, which were

13 admitted during Dr. Duralde's testimony at trial. The record shows R.W.'s mother found R.W. in

14 the bathroom with a toothbrush in his rectum. Dkt. 17, Exhibit 5, pp. 746-47. After speaking with

15 R.W., R.W.'s mother called the police, who recommended R.W. be taken to the hospital. *Id.* at p.

16 747-51. R.W.'s mother took R.W. to Mary Bridge Hospital, where he was treated by Dr.

17 Yolanda Duralde. *Id.* at p. 750-51; Dkt. 17, Exhibit 6, p. 839. Dr. Duralde was the medical

18 director of the child abuse intervention department. Dkt. 17, Exhibit 6, p. 828-30. She examined

19 R.W. on March 4, 2002. *Id.* at p. 839.

20      At the trial, the day before Dr. Duralde testified, the trial court stated that a factor

21 regarding the "state child hearsay" rule is unavailability. Dkt. 17, Exhibit 5, p. 743. The trial

22 court then made a finding that R.W. was "basically unavailable" given his current age and the

23 age at the time of the alleged crimes. *Id.* Then, immediately prior to Dr. Duralde testifying, the

24

defense moved to exclude any testimony regarding statements R.W. made to Dr. Duralde during

her examination of R.W. *Id*. at Exhibit 6, p. 815-20. The trial court denied the motion and found

R.W.'s statements to Dr. Duralde fell within a hearsay exception: statements made for medical

diagnosis or treatment. *See id*. at 821-23; *see also* Washington Evidence Rule 803(a)(4). Dr.

Duralde testified about her examination of R.W. on March 4, 2002. Dkt. 17, Exhibit 6, p. 839-48.

She also testified about statements R.W. made stating Petitioner had touched him and explained

where Petitioner touched him. *Id*. at p. 845.

On direct appeal, Petitioner raised this Confrontation Clause issue. The state court of

appeals declined to consider whether R.W.'s testimony violated the Confrontation Clause and

held any possible error was harmless. Dkt. 17, Exhibit 21. After discussing the legal standard of

the Confrontation Clause, the state court of appeals found:

> It is well established that constitutional errors, including violations of a
> defendant's rights under the confrontation clause, may be so insignificant as to be
> harmless. *Harrington v. California,* 395 U.S. 250, 251–52, 89 S.Ct. 1726, 23
> L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 21–22, 87 S.Ct. 824, 17
> L.Ed.2d 705 *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). A
> constitutional error is harmless if the appellate court is convinced beyond a
> reasonable doubt that any reasonable jury would have reached the same result in
> the absence of the error. Any violation of *Crawford* in this case is harmless, given
> the overwhelming physical evidence showing Grenning's assaults on RW.
>
> Even absent RW's statements to his mother and doctor, the untainted evidence of
> Grenning's guilt was overwhelming. Each count was supported by graphic
> photographs found on Grenning's personal computer. Grenning took the
> photographs while committing the crimes against RW and BH. The pictures
> depict Grenning raping and molesting the children. Grenning's, BH's, and RW's
> faces are visible in many of the photographs that depict child rape and
> molestation. The record is replete with evidence supporting Grenning's
> convictions. In addition to the photographs, there was an audio recording and
> physical evidence seized from Grenning's residence that support the convictions.
> We have no reasonable doubt that even absent the hearsay, the jury viewing the
> photographs, viewing the items seized from Grenning's residence, hearing BH's
> testimony, and listening to the audio recording would have found Grenning guilty
> beyond a reasonable doubt. We hold that any violation of *Crawford* was harmless.

1 | Dkt. 17, Exhibit 21, pp. 19-20; *Grenning*, 142 Wash. App. at 542.

2 | As correctly discussed by the state court, the Supreme Court has held Confrontation

3 | Clause errors can be subject to a harmless error analysis. *See Chapman v. California*, 386 U.S.

4 | 18, 24 (1967); *Delaware v. Van Arsdall*, 475 U.S. 673, 680-84 (1986). As stated in *Van Arsdall*,

5 |
6 |
7 |
8 |
9 |
> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

10 | 475 U.S. at 684.

11 | Regardless of whether there was a Confrontation Clause violation, the record supports the

12 | state court's finding that any violation was harmless. The record shows Dr. Duralde provided

13 | limited testimony that, when she asked R.W. if anyone had touched him on his "pee-pee or his

14 | butt," R.W. said Petitioner had. Dkt. 17, Exhibit 6, p. 845. When Dr. Duralde asked what

15 | happened with "his pee-pee", R.W. told her Petitioner was "just looking at it." *Id*. He said

16 | Petitioner had not touched him anywhere else. *Id*. R.W. also said Petitioner was the only person

17 | who had touched him or made him feel uncomfortable. *Id*. In addition to this evidence, the State

18 | produced a large volume of photographic evidence, some of which showed Petitioner engaged in

19 | sexual acts with a minor and showed R.W. engaged in sexual acts while laying on Petitioner's

20 | bed. *See id*. at Exhibits 4-5; Dkt. 17, Exhibit 16, pp. 14-23. Additionally, the State introduced

21 | physical evidence and an audio recording found in Petitioner's home and Petitioner's mother and

22 | several police officers testified. *Id*. at Exhibits 3-5, 6. The Court also notes, during his closing

23 | argument, Petitioner's counsel did not contend that Petitioner did not engage in sexual acts with

24 |

1    R.W. *See id*. at Exhibit 7, pp. 946-53. Rather, he argued State had charged Petitioner with

2    duplicate counts based on the same acts; essentially, counsel argued the State overcharged

3    Petitioner. *Id*. (arguing the pictures showed a "movie" rather than individual incidents).

4         Considering all the evidence presented to the jury, the Court finds Petitioner has not

5    shown no reasonable jury would have convicted him if Dr. Duralde had not testified regarding

6    R.W.'s comments. As such, he has failed to show that, even if Dr. Duralde's testimony violated

7    Petitioner's Confrontation Clause rights, the violation resulted in a harmful error.

8         Therefore, Petitioner fails to demonstrate the state court's conclusion finding Petitioner's

9    right to confront a witness was not violated when Dr. Duralde testified regarding a few of R.W.'s

10   statements was contrary to, or was an unreasonable application of, clearly established federal law,

11   or was an unreasonable determination of the facts in light of the evidence presented in this case.

12   Accordingly, Ground 6 should be denied.

13        F.    Sufficiency of Evidence (Grounds 7 and 8)

14        In Grounds 7 and 8, Petitioner asserts there was insufficient evidence to support the

15   convictions for second degree assault of a child (Count 40) and first degree rape of a child

16   (Count 36). Dkt. 8, pp. 16, 18. The Constitution forbids the criminal conviction of any person

17   except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When

18   evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court

19   must decide "whether, after viewing the evidence in the light most favorable to the prosecution,

20   any rational trier of fact could have found the essential elements of the crime beyond a

21   reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad

22   discretion in deciding what inferences to draw from the evidence presented at trial, requiring

23   only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v*.

24

1  *Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to

2  believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S.

3  277, 296 (1992).

4      1. *Second degree assault of a child (Ground 7)*

5      Petitioner was convicted a single count of second degree assault of a child (Count 40).

6  Dkt. 8, p. 16. In Ground 7 of the Petition, Petitioner contends Count 40 was charged solely based

7  on trial exhibits 081 thought 088. *Id*. He asserts none of the images show Petitioner or show

8  Petitioner touching R.W. *Id*. The Court found Ground 7 is unexhausted and procedurally barred;

9  however, as Respondent also argued this ground on the merits, the Court will analyze Ground 7

10  on the merits.

11      In discussing Count 40, the Commissioner of the state supreme court found:

12      In this instance, an assault occurred by means of the offensive attachment of wires
to the child's intimate areas. *See State v. Byrd*, 125 Wn.2d 707, 712 n.3, 887 P.2d

13  396 (1995) (common law battery assault). Mr. Grenning's suggestion that there
was no compulsion or that the touching was not offensive because the child is

14  shown smiling is unworthy of further comment.

15      . . .

16      Here, the intent to commit sexual exploitation, not the completed exploitation,
supports elevating the assault to second degree. RCW 9A.36.021(1)(e).

17
18  Dkt. 17, Exhibit 71, pp. 3-4

19      In Count 40 of the Fifth Amended Information, Petitioner was charged with the crime of

20  assault of a child in the second degree. Dkt. 17, Exhibit 8. The charge was based on the assault of

21  R.W. as depicted in "images 0263.jpg; 0264.jpg; 0265.jpg; 0266.jpg; 0267.jpg; 0268.jpg;

22  029.jpg; and/or 0270.jpg." *Id*. at Exhibit 8, p. 16. The State's Supplemental Declaration for

23  Determination of Probable Cause stated Count 40 is based on Petitioner "placing what appears to

24  be an 'alligator clip' on the victim's genitals . . . There is also wire running from both the

1  'alligator clamps' on his chest and genitals to an unknown location." *Id*. at Exhibit 8A, p. 6. At

2  the trial, images 0263.jpg, 0264.jpg, 0265.jpg, 0266.jpg, 0267.jpg, 0268.jpg, 0269.jpg, and

3  0270.jpg were admitted into evidence as exhibits 81 through 88. *See* Dkt. 17, Exhibit 4, pp. 600-

4  04. Detective Richard Voce testified the images were located on Petitioner's computer and

5  images 0263.jpg, 0264.jpg, 0266.jpg, 0268.jpg, 029.jpg, and 0270.jpg appeared to be taken in

6  Petitioner's bedroom. *Id*. at 520, 600-04. Further, he testified the items attached to the victim in

7  the images, R.W., were found in a container in Petitioner's closet. *Id*. at 601; Dkt. 17, Exhibit 3,

8  pp. 377, 382-83.

9          The evidence, when viewed in the light most favorable to the prosecution, was

10  constitutionally sufficient to support the jury's verdict of second degree assault of a child. As

11  charged in this case, the crime of second degree assault of a child required proof that Petitioner

12  assaulted a child under the age of thirteen with the intent to commit a felony. *See* RCW

13  9A.36.130(1)(a); RCW 9A.36.021(1)(e); Dkt. 17, Exhibit 67, App. D, Fifth Amended

14  Information, & App. E, Instructions 33-37. The evidence at trial showed images of a

15  prepubescent child with an electrical device, belt, and wires attached to his chest and genitals.

16  There was testimony that the pictures appeared to be taken in Petitioner's bedroom and the

17  electrical device was found in Petitioner's closet.

18          Petitioner asserts that the images do not show him "touching" R.W. and therefore there is

19  insufficient evidence to convict him of assault. *See* Dkt. 24, pp. 66-74. He does not dispute that

20  he took the pictures. *Id*. at p. 72. There was evidence presented to the jury showing the images

21  were located on Petitioner's computer, the photographs were taken in Petitioner's bedroom, and

22  the items attached to R.W. were found in a container in Petitioner's closet. As there was

23  evidence tying Petitioner to the images and the items attached to R.W., a rational jury could

24

conclude Petitioner committed the crime of assault of a child in the second degree by placing a device on R.W.'s genitals and chest with the intent to commit a felony, sexual exploitation of a minor. *See* RCW 9.68A.040(2) (sexual exploitation of a minor is a class B felony); *see also* Dkt. 17, Exhibit 67, App. E, Instructions 33-37. As such, the Court finds there was sufficient evidence for a rational jury to conclude Petitioner committed the charged crime of second degree assault of a child.

Additionally, the jurors were instructed that the reference numbers on the exhibits and in the jury instructions were there for the prosecution to prove its case in the manner it felt was most consistent. *See* Dkt. 17, Exhibit 7, p. 968; Dkt. 17, Exhibit 67, App. E, Instruction 8. At one point, the jury had a question because the jurors did not feel the exhibit numbers were correctly aligned with the count the exhibit was said to prove. *See* Dkt. 17, Exhibit 7, p. 968. The trial court noted that the jury had the ability to find another piece of evidence supported a particular count, regardless of the exhibits assigned to each count by the prosecution. *See id*. Thus, simply because the prosecution linked specific exhibits to specific counts in the Fifth Amended Information does not show the jury was only allowed to rely on that specific exhibit in determining guilt or innocence.

Therefore, Petitioner fails to demonstrate the state court's conclusion that there was sufficient evidence for the jury to determine Petitioner was guilty of second degree assault of a child (Count 40) was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, Ground 7 should be denied.

1       2.  *Rape of a child (Ground 8)*

2              Petitioner was convicted of first degree rape of a child (Count 36). *See* Dkt. 8, p. 18. In

3       Ground 8 of the Petition, Petitioner contends Count 36 was based solely on trial exhibit 71. *Id.*

4       He asserts the "sole evidence" does not show the requisite penetration with R.W.'s anus. *Id.*

5              In Petitioner's first PRP, the state court of appeals concluded the evidence was sufficient

6       to convict Petitioner on Count 36, and stated:

7              In evaluating the sufficiency of the evidence we consider the evidence presented
               and reasonable inferences from the evidence in the light most favorable to the
8              State. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

9              As charged, the State had to prove that petitioner had sexual intercourse with
               R.W., that R.W. was less than twelve years old and not married to petitioner, that
10             petitioner was at least 24 months older than R.W., and that the acts occurred in
               Washington State. Instructions 15 and 25. The trial court instructed the jury that
11             exhibits 37, 38, and 39 pertained to count 11 and that exhibit 71 pertained to
               count 36.

12
               Petitioner argues only one element and that is that none of these exhibits shows
13             sexual intercourse, citing *State v. A.M.*, 163 Wn. App. 414, 420-21, 260 P.3d 229
               (penetration of the buttocks but not the anus insufficient to show sexual
14             intercourse).

15             The trial court defined sexual intercourse:

16             Sexual intercourse means any penetration of the anus however slight, by an
               object, when committed on one person by another, whether such persons are of
17             the same or opposite sex or any act of sexual contact between persons involving
               sex organs of one person and the mouth or anus of another whether such persons
18             are of the same or opposite sex.

19             Instruction 10. Exhibits 37-39 show petitioner with the juvenile's penis in his
               mouth. This is sufficient to meet the definition of sexual intercourse. Further, a
20             jury could reasonably infer from Exhibit 71 that petitioner's penis is inserted into
               the victim's anus. This is sufficient to meet the definition of sexual intercourse.

21
22      Dkt. 17, Exhibit 59, pp. 3-4. On discretionary review, the Commissioner found Petitioner failed

23      to show the acting chief judge for the state court of appeals erred when he found that it

24

REPORT AND RECOMMENDATION - 48

1   reasonably can be inferred Petitioner's penis penetrated the victim's anus from the photographic

2   evidence. *Id*. at Exhibit 61, p. 5.

3        In Count 36 of the Fifth Amended Information, Petitioner was charged with the crime of

4   rape of a child in the first degree. Dkt. 17, Exhibit 8. The charge was based on Petitioner

5   engaging in sexual intercourse with R.W. as depicted in image 0235.jpg. *Id*. at Exhibit 8, p. 15.

6   At the trial, image 0235.jpg was admitted into evidence as exhibit 71. *See* Dkt. 17, Exhibit 4, pp.

7   593. Detective Voce testified exhibit 71 was located on Petitioner's computer and appeared to be

8   taken in Petitioner's bedroom. *Id*. at 520, 593. Exhibit 71 shows a pre-pubescent male lying on

9   his back with his genital area naked, legs spread, knees bent, and feet pointing outward towards

10   the side so that his feet are against the torso/thighs of an adult male with the adult male's penis

11   near the anus of a pre-pubescent male. *See generally* Dkt. 49 (custody of exhibit 71 in possession

12   of the Court); *see also* Dkt. 17, Exhibit 16, p. 21, Exhibit 57, pp. 21-22.

13        Here, the state courts correctly applied the sufficiency of evidence standard when finding

14   there was sufficient evidence to convict Petitioner of rape of a child under Count 36. The

15   evidence, when viewed in the light most favorable to the prosecution, was constitutionally

16   sufficient to support the jury's verdict of second degree assault of a child. As charged in this

17   case, the crime of first degree rape of a child required proof that Petitioner had sexual intercourse

18   with R.W. who was less than twelve years old and not married to Petitioner and Petitioner was at

19   least twenty-four months older than R.W.[3] *See* RCW 9A.44.073(1); Dkt. 17, Exhibit 67, App. E,

20   Instructions 9-10, 25. The evidence at trial showed an image of a pre-pubescent male lying on his

21   back with his genital area naked, his legs spread open and his feet pressed against the

---

23       [3] Petitioner challenges only the fact that exhibit 71 does not show anal penetration. *See* Dkt. 8, 24. As he
does not challenge other elements of the conviction of first degree rape of a child (i.e. age of the victim, age of
24   petitioner, and location), the Court finds these challenges to the sufficiency of the evidence as to Count 36 waived.

1    torso/thighs of an adult male. The adult male is clothed, but his penis is exposed. The pre-

2    pubescent male's anal cavity is exposed to the adult male's penis. While the tip of the adult

3    male's penis cannot be seen, it was reasonable for the jury to infer Petitioner's penis is inserted

4    into the pre-pubescent male's anus. Additionally, there was evidence the photograph was taken

5    in Petitioner's bedroom.

6         The Court notes Petitioner does not contest that he is the adult male in exhibit 71. *See*

7    Dkt. 8, 24. He merely argues exhibit 71 does not show his penis inserted into R.W.'s anus.

8    However, from exhibit 71, a rational jury could conclude Petitioner engaged in sexual

9    intercourse by inserting his penis into R.W.'s anus. *See Moreno v. Cash*, 2011 WL 7069560, at

10   *3-4 (C.D. Cal. Nov. 28, 2011) (finding the state court's decision was not contrary to or an

11   unreasonable application of Supreme Court precedent when the state court found a reasonable

12   fact finder could have concluded penetration of the anus occurred when the evidence was a

13   photograph of a man's erect penis wedged between the buttocks of a young child); *Schuster v.*

14   *Duffey*, 2009 WL 2901517 (N.D. Ohio Sept. 3, 2009) (finding, on habeas review, that a

15   photograph showing petitioner with "finger on her daughter's genital area" was alone sufficient

16   to demonstrate penetration even though the doctor had found no medical evidence to support it).

17        Furthermore, as stated above, the jurors were instructed that the reference numbers on the

18   exhibits and in the jury instructions were there for the prosecution to prove its case in the manner

19   it felt was most consistent. *See* Dkt. 17, Exhibit 7, p. 968; Dkt. 17, Exhibit 67, App. E,

20   Instruction 8. The trial court noted that the jury had the ability to find another piece of evidence

21   supported a particular count, regardless of the exhibits assigned to each count by the prosecution.

22   *See* Dkt. 17, Exhibit 7, p. 968. As such, the jury was allowed to review all the evidence, not

23

24

1  simply rely on the specific exhibit identified by the prosecution for each count when determining

2  Petitioner's guilt or innocence for Count 36.

3       The Court finds Petitioner fails to demonstrate the state court's conclusion that there was

4  sufficient evidence for the jury to determine Petitioner was guilty of first degree rape of a child

5  (Count 36) was contrary to, or an unreasonable application of, clearly established federal law, or

6  was an unreasonable determination of the facts in light of the evidence presented at trial.

7  Accordingly, Ground 8 should be denied.

8       G.  Cruel and Unusual Punishment (Ground 9)

9       In Ground 9, Petitioner contends his sentence, de facto life, on a first, non-homicidal

10 offense constitutes cruel and unusual punishment. Dkt. 8, p. 20.

11      The Eighth Amendment proscribes the infliction of "cruel and unusual punishments."

12 U.S. Const. amend VIII.  While the constitutional principle of proportionality between crime and

13 sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict

14 proportionality.... Rather, it forbids only extreme sentences that are 'grossly disproportionate' to

15 the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (citation omitted). The Supreme Court

16 has explained the approach for determining if a sentence is grossly disproportionate to a crime is

17 as follows:

18      A court must begin by comparing the gravity of the offense and the severity of the
        sentence. . . . "[I]n the rare case in which [this] threshold comparison ... leads to
19      an inference of gross disproportionality" the court should then compare the
        defendant's sentence with the sentences received by other offenders in the same
20      jurisdiction and with the sentences imposed for the same crime in other
        jurisdictions.

21

22 *Graham v. Florida*, 560 U.S. 48, 60 (2010) (citations omitted). The gross disproportionality

   principle applies "only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538

23 U.S. 63, 73 (2003) (citation omitted).

24

REPORT AND RECOMMENDATION - 51

1    In determining of Petitioner's sentence was cruel and unusual, the state court of appeals

2    stated,

3    Grenning argues that his sentence constitutes cruel and unusual punishment under
the Eighth Amendment to the United States Constitution and article 1, section 14
4    of the Washington Constitution. However, given the nature of the crimes
Grenning committed, we hold that his sentence does not constitute cruel and
5    unusual punishment.

6    Punishment is cruel and unusual if it "is of such disproportionate character to the
offense as to shock the general conscience and violate principles of fundamental
7    fairness." *State v. LaRoque,* 16 Wash.App. 808, 810, 560 P.2d 1149 (1977).
Whether a sentence is grossly disproportionate to the crime for which it is
8    imposed and violates the state and federal constitutional prohibitions against cruel
punishment depends on the (1) nature of the offense; (2) legislative purpose
9    behind the statute; (3) punishment the defendant would have received in other
jurisdictions; and (4) punishment imposed for other offenses in the same
10   jurisdiction. *State v. Ames,* 89 Wash.App. 702, 709, 950 P.2d 514 (1998). These
are only factors to consider and no one factor is dispositive. *State v. Gimarelli,*
11   105 Wash.App. 370, 380–81, 20 P.3d 430 (2001).

12   Grenning committed crimes against two young children, RW and BH, both under
the age of six at the time of the crimes. Grenning took and saved graphic
13   photographs of the acts. Grenning's sentence does not shock the general
conscience, given the severity and gruesome nature of the crimes committed.
14   Given the gravity of Grenning's offenses, we do not feel it necessary to discuss
the three remaining factors. Grenning's sentence is entirely reasonable.

15   Dkt. 17, Exhibit 21, p. 23; *Grenning,* 142 Wash. App. at 545-46.

16   In this case, Petitioner was convicted of 51 sex offenses against minors, including 34

17   class A felony crimes of rape of a child, attempted rape of a child, and child molestation. *See*

18   Dkt. 17, Exhibit 7, pp. 970-81, 1000; Dkt. 17, Exhibit 8; RCW 9A.44.073 (rape of a child –class

19   A felony); RCW 9A.28.020(3)(a) (attempted rape of a child – class A felony); RCW 9A.44.083

20   (child molestation in the first degree – class A felony). The 34 class A felony convictions are all

21   punishable up to a maximum of life imprisonment. *See* Dkt. 17, Exhibit 39; RCW 9A.20.021.

22   The record shows Petitioner was convicted of multiple episodes of crimes against two victims,

23

24

REPORT AND RECOMMENDATION - 52

1   both under the age of six or seven at the time of the crimes. *See generally* Dkt. 17, Exhibits 5-7,

2   12. Petitioner also photographed the acts and saved the photographs. *See id*.

3          The state court found that due to the severity and gruesome nature of the crimes

4   committed, Petitioner's sentence was not cruel and unusual. Essentially, the state court compared

5   the gravity of the offenses and the severity of the sentence and found the comparison did not lead

6   to an inference of gross disproportionality. Under Federal law, the state court did not need to

7   consider the remaining factors described in *Graham*. *See Graham*, 560 U.S. at 60. Based on the

8   evidence presented at trial and sentencing, the Court finds Petitioner has not shown the state

9   court's conclusion that Petitioner's sentence was not cruel and unusual was contrary to, or an

10  unreasonable application of, clearly established federal law, or was an unreasonable

11  determination of the facts in light of the evidence presented at trial. Accordingly, Ground 9

12  should be denied.

13                    <u>CERTIFICATE OF APPEALABILITY</u>

14         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

15  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

16  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

17  may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

18  constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

19  that jurists of reason could disagree with the district court's resolution of his constitutional

20  claims or that jurists could conclude the issues presented are adequate to deserve encouragement

21  to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*,

22  529 U.S. 473, 484 (2000)).

23

24

1    No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

2    would conclude the issues presented in the Petition should proceed further. Therefore, the Court

3    concludes Petitioner is not entitled to a certificate of appealability with respect to this Petition.

4                                          <u>CONCLUSION</u>

5    For the above stated reasons, the Court recommends Ground 6, in part, and Ground 7, in

6    full, be dismissed and recommends Grounds 1-5, the remaining portion of Ground 6, and

7    Grounds 7-9 be denied.[4] No evidentiary hearing is necessary and a certificate of appealability

8    should be denied.

9    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

11   6. Failure to file objections will result in a waiver of those objections for purposes of de novo

12   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

13   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May

14   25, 2018 as noted in the caption.

15   Dated this 8th day of May, 2018.

16

17   _____

18   David W. Christel
     United States Magistrate Judge

19

20

21

22

23   _____

24   [4] The Court recommends Ground 7 be dismissed for failure to exhaust. However, the Court also finds
     Ground 7 should be denied on the merits.